STATE, Respondent, v. DEAN, Appellant.

(274 N. W. 817)

(File No. 8010. Opinion filed September 1, 1937)

*Paul E. Martin,* of Hot Sprnigs, and *Preston T. McAvoy,* of Newcastle, Wyo., for Appellant.

*Clair Roddewig,* Atty. Gen., *Ellsworth E. Evans,* Asst. Atty. Gen., and *C. A. Wilson,* State's Atty., of Hot Springs, for the State.

WARREN, J.  The defendant, Tom Dean, was charged with the murder of one Byron Campbell, and was tried and convicted in the circuit court of Fall River county, state of South Dakota. The circuit court overruled defendant's motion for a new trial, and defendant has appealed from the judgment and the order overruling his motion for new trial.

Appellant, in his appeal, has set forth three assignments of error: First, insufficiency of the evidence to support the submission of the case to the jury and its resulting verdict of guilty; second, that the court erred upon questions of law during the trial, and especially during the examination of prospective jurors; third that the court erred in overruling appellant's motion for a new trial.  It will be seen from the brief of appellant that he relies chiefly upon the failure of the State to establish the corpus delicti and the errors made by the court during the examination of the jurors.  These two contentions of appellant will be considered in detail, but such other and minor questions as are presented may be dismissed, because an examination of the record clearly shows the lack of any prejudicial error resulting therefrom.

Turning our attention to the question of whether or not the State failed to establish the corpus delicti, we find that appellant raises this question under section 4009 of the Revised Code of 1919, which reads as follows: "No person can be convicted of murder or manslaughter, or of aiding suicide, unless the death of

the person alleged to have been killed, and the fact of the killing by the accused, are each established as independent facts beyond a reasonable doubt." Appellant was convicted of the crime of murder and he now contends that the said section 4009 of the Revised Code of 1919 has not been complied with, in that the death of the person alleged to have been killed and the fact of the killing by the accused (appellant) were not established beyond a reasonable doubt by the evidence before the court. With this contention of appellant we are forced to disagree. There was considerable evidence introduced which showed the death of the person alleged to have been killed. For example, there is the direct testimony of the undertaker called to care for the body, who testified as follows:

"Q. On December 20th, did you go to Goulding's pool hall to care for the body of Byron Campbell? A. Yes, sir, I did.

"Q. Was Campbell still on the floor when you got there? A. Yes, sir.

"Q. Was he dead or alive? A. He was dead, positively."

In view of the fact that the said Byron Campbell is the person who was alleged to have been killed, the appellant cannot successfully assert that the State failed to establish the fact of his death.

In considering the question of whether or not the State successfully established the killing as being done by the accused (appellant), we have before us the testimony of witnesses who saw the appellant fire several bullets from an automatic pistol into the body of the said Byron Campbell, plus the admission of the appellant, while on the witness stand and under oath, that he had shot and killed Byron Campbell. A portion of appellant's testimony is as follows:

"Q. You knew that morning Campbell was dead, didn't you? A. Yes.

"Q. And that you killed him? A. Yes."

In the opinion of this court, such evidence, given by appellant, and corroborated by witnesses who saw appellant shoot Byron Campbell, is sufficient to comply with the statute and establish beyond a reasonable doubt the fact that the killing was done by the accused (appellant), and the appellant cannot successfully

contend that the State has failed to establish such fact with sufficient evidence.

Appellant's contention that the trial court committed reversible error in asking certain questions of prospective jurors, and in failing to allow appellant's challenges for cause to said jurors, is we believe, without much merit. The challenges for cause, which appellant contends it was error to refuse, were based upon certain questions on the part of counsel for appellant relating to whether or not the prospective jurors were prejudiced against the defense of self-defense in a murder trial. Without attempting to set forth all of them, we quote from the record an illustrative example of the questions asked by counsel for appellant, the answers given by the prospective juror, and the questions and comments of the court:

"During the examination voir dire of the juror Charles Emick, request was made that the court reporter take the examination, whereupon the following record was made, viz.:

"By the Court: I said to the juror Charles Emick, on the Court's examination after a challenge for cause, which was made subsequent to an examination as to the views of self-defense by counsel for the defendant, in substance as follows: The law recognizes self-defense as a principle of law, even to the extent of using a gun, when the circumstances justify. The Court cannot include all the circumstances in a question that might arise in any given case. What we desire to learn here is whether or not your individual views are such that you would not be governed by the rules of law that would be given to you in this case if self-defense is urged, and if self-defense is urged the Court will later tell you in detail what the law of self-defense is!

"By Mr. Martin: I wish to object to the Court stating as far as he has what the law applicable to this case is at this time, in the examination of the jury.

"By the Court: The exception is allowed. Mr. Emick, The Court is not at this time undertaking to tell you what the law is, beyond this, that the law does recognize a law of self-defense under proper circumstances, and the details of that law will be given to you at the proper time, if there are any facts develop in this case that make it a necessary instruction to the jury. What I want

to know now is if you will be governed by the instructions of the Court and recognize the law as it is told to you by the Court in your determination of this case.

"By the Juror: Yes, sir."

Examintaion by the Court of Juror Emick:

"2. In other words, if the Court tells you that the right of self-defense exists under certain conditions, and you believe that those conditions exist as a fact in this case, would you then acquit a man? A. Yes, sir.

"Q. Would you do that, notwithstanding you believe that the law may go too far in giving a man the right of self-defense? A. You mean I would take the Court's instructions over my own convictions or opinion?

"Q. As to law? A. As to law, yes.

"Q. Would you be governed by the Court's instructions as to the law? The Court isn't going to try to decide any of the facts for you; you will have to do that. The Court will tell you the general principles of law. Will you accept and be guided by those principles of law that the Court gives you? A. Yes, sir.

"Q. Even though you think some of them are unwise? A. I believe I could.

"Q. Will you do it? I know you can if you will. A. Yes, sir.

"By Mr. Martin: I object to that statement as an opinion of the Court as to the qualifications of the juror."

Redirect Examination by Mr. Martin:

"Q. Mr. Emick, I believe I asked you if the situation was reversed and you were on trial accused of some crime, would you want a man in the state of mind you are in to serve on the jury, and I believe you answered the question no. Is that right? A. I think I said I would be alright, something like that.

"Q. I said in this case if the question is the defense of self-defense, would you want a man in the same frame of mind you are in to be on a jury that was trying you? A. I think he would be alright.

"Q. But you answered no the other time? A. No.

"Q. You feel you can try a case of self-defense fairly and impartially? A. I believe I can.

"Q. You have a natural prejudice against a man defending himself from a whipping with a gun? A. A personal, yes.

"Q. When though he is liable to get a severe beating, you figure he is not justified in shooting a man to protect himself from a beating, you figure he should take the beating? A. I thought that was cleared up when the Court said the Court would point out the law regarding that.

"Q. But what is your natural prejudice on the point? A. The same as it was.

"By Mr. Lewis: We will object, for the reason it has been gone over by counsel for the State and Counsel for defendant.

"By Mr. Martin: It is simply an effort to get into the record the part of the examination that took place before.

"By the Court: All right, go ahead.

"Q. You answered me in my first example, I believe, to the effect you had a natural prejudice against a man defending himself from a licking with a gun? A. I think I did.

"Q. You are sure you did, aren't you? A. Yes."

Examination by the Court:

"Q. Mr. Emick, do you feel that you can serve as a juror fairly and impartially in this matter? A. Yes, sir."

"Q. You conscientiously feel that you can act conscientiously as a juror? A. Yes, sir.

"Q. Be governed by the law as it is given to you by the Court and in connection with the facts, base your conclusion on the evidence in the case? A. Yes, sir.

"Q. You will do all of those things? A. Yes, sir.

"By the Court: Challenge denied."

Examination of other prospective jurors indicated that they too were somewhat prejudiced against a man using a gun to defend himself from physical injury when the man attacking was unarmed. Appellant contends that because of this his challenges for cause should have been sustained. The appellant also objects

to the various questions and comments by the court, though they were clearly an attempt to clarify the matter in the minds of the prospective jurors.

We do not believe that the court erred in overruling the appellant's challenges for cause to the various jurors. The appellant attempted to establish that these prospective jurors had a strong natural prejudice against the defense of self-defense which would take evidence upon the part of appellant to overthrow, and which would naturally result in prejudice against the appellant. The court, in an attempt to clarify the matter, asked these jurors if they would abide by the instructions of the court concerning the law of self-defense in the event that the evidence introduced showed that the facts and circumstances surrounding the shooting indicated that it was done in self-defense. To these questions, the court received affirmative answers. We believe the rulings of the court as to the qualifications of the jurors were correct, and this seems to be the view entertained by appellate courts that have passed upon similar questions affecting the qualifications of jurors. See State v. Croney, 31 Wash. 122, 71 P. 783, State v. Baker, 246 Mo. 357, 152 S. W. 46, 52, and Polk v. State, 148 Ga. 34, 95 S. E. 988. The fact that these jurors stated, upon examination by counsel for appellant, that they had a personal prejudice against the use of a gun in defense against a physical assault by one unarmed would not refute the presumption of their honesty in stating that they would consider the facts of the case impartially according to the instructions on the law as given by the court.

Having held that section 4009 of the Revised Code of 1919 was sufficiently complied with, and that the trial court did not err in overruling appellant's challenges for cause to several jurors, and finding no prejudicial error in the record, the judgment and order appealed from are affirmed.

All the Judges concur.