STATE, Respondent v. FLACK, Appellant

(89 N.W.2d 30)

(File No. 9652. Opinion filed March 31, 1958)

**Pat Morrison, Julius Skaug,** Mobridge, **Morrill & Morrill,** Sturgis, for Defendant and Appellant.

**Phil Saunders,** Atty. Gen., **E. D. Barron, George W. Wuest,** Asst. Attys. Gen., **Russell C. Molstad,** State's Atty., Sturgis, for Plaintiff and Respondent.

HANSON, J. The defendant Leslie "Bud" Flack was charged with the theft of 233 branded cattle in five counts of an information filed by the State's Attorney of Meade County. During the trial, on motion of defendant, the five counts were combined into one offense of grand larceny. The jury found defendant guilty and he was sentenced to serve ten years in the state penitentiary. He appeals.

The cattle were alleged to have been taken from George Altfillisch on July 25, 1956. Altfillisch, a bachelor, 67 years of age, owned and lived on a ranch 22 miles south of Faith. He ran approximately 280 head of cattle. His brand was C slash A on the left hip. The brand expired on May 1, 1955 for nonpayment of the registration fee. The brand became eligible for reregistration on January 1,

1956. On January 9, 1956 the brand was registered in the name of defendant, who lived on a nearby ranch.

Ralph Collins, a neighboring rancher, worked with defendant fixing fence in April, 1955. They had a conversation in which defendant said "he had read an article about a guy in Wyoming registering another fellow's brand and occupying another fellow's cattle. And the guy that owned the cattle didn't assess many cattle and he let his brand run out. And he said this guy sold these cattle and they couldn't do anything with him. * * * He said if a man owned a brand that he owned the cattle. I said, 'I don't think so. It's just prima facie evidence'. * * * He said, 'you take a guy like George Altfillisch, if that happened to him he didn't have no friends or neighbors and nobody would go up and talk to him.' " Defendant's story of the "perfect cattle crime" is a blueprint of the evidence in this case. It follows substantially the same pattern. The sufficiency of the evidence to sustain the conviction is not questioned.

Defendant's assignments of error relate to (1) the denial of challenges for cause to prospective jurors, (2) the allowance of defendant's prior conviction to be introduced in evidence, and (3) the refusal of the trial court to give defendant's requested instruction on circumstantial evidence.

During the selection of the jury defendant challenged Loy Burditt, J. P. Miller, and Charles Burd for cause. The challenges were denied and defendant expended three of his ten peremptory challenges in removing these jurors. After exhausting his ten peremptory challenges defendant requested three additional peremptory challenges to replace those used in removing the challenged jurors. This request was denied.

A defendant should not be compelled to use his peremptory challenges upon prospective jurors who should have been excused for cause. Prejudice will be presumed if a disqualified juror is left upon the jury in the face of a proper challenge for cause, so that defendant must either use one of his peremptory challenges or permit the juror to sit. Prejudice results when defendant is re-

quired to, and does, exhaust all of his allowable peremptory challenges. State v. Beckwith, 242 Iowa 228, 46 N.W.2d 20.

On a challenge for actual bias the trial court is called upon to determine the existence of the juror's "state of mind". SDC 34.3617. In performing that fact-finding function it necessarily is vested with a broad discretion. Single isolated responses are not determinative. The qualifications of a juror must be determined from the whole voir dire examination. Also "the trial court is able to judge to a large extent from the general appearance and conduct of a venireman whether he is competent to act as a juror * * *." State v. Mitchell, 46 S.D. 272, 192 N.W. 487, 488; Haugen v. Chicago, M. & St. P. Ry. Co., 3 S.D. 394, 53 N.W. 769; State v. Church, 6 S.D. 89, 60 N.W. 143; State v. Morse, 35 S.D. 18, 150 N.W. 293; State v. Dean, 65 S.D. 433, 274 N.W. 817, 112 A.L.R. 527. The three challenged jurors stated, in substance, they had read about the case; heard it discussed in the community; and had formed an opinion therefrom concerning the guilt or innocence of defendant which would require evidence to remove. Burditt was further asked if he could listen to the facts and, notwithstanding his opinion, act fairly and impartially in the matter. He replied "I think so." Miller testified he had a "pretty strong opinion. I might not be exactly impartial in the matter." On the other hand Miller testified if the evidence were the other way he could change his opinion; that he could act fairly and impartially in the matter; and, if selected as a juror, he would follow his oath and render a fair and impartial verdict. Likewise Burd testified he could follow his oath as a juror and act fairly and impartially in the matter. None of the jurors appeared to have a fixed and unqualified opinion about the case; none had talked to anyone who purported to know what the facts of the case were; and none expressed any bias or prejudice against the defendant personally.

Clearly all of the challenged jurors came within the statutory exception that "no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals

or common notoriety, provided it appears to the Court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him." SDC 34.3620.

In denying the challenges the trial court determined the questioned jurors could and would, notwithstanding their opinions, act fairly and impartially. This finding was made on conflicting evidence indicating both disqualification and competency to act as jurors. In each case the trial court's conclusion was based on a consideration of the entire voir dire examination and also upon the intangible manifestations of impartiality reflected by the juror's appearance, conduct, and demeanor in the courtroom.

■■■ We cannot try a challenge de novo on the record alone. Our review is limited to a question of law. The ruling of the trial court will not be disturbed, except in the absence of any evidence to support it, in which case it becomes an error at law. "When the evidence of each juror is contradictory in itself, and is subject to more than one construction, a finding by the trial court either way upon the challenge is conclusive on appeal." 4 Cal.Jur.2d, § 603, p. 483. In the present case the evidence of each challenged juror was contradictory and subject to more than one construction. The rulings of the trial court on such conflicting evidence are, therefore, binding on this court. SDC 34.4002(5); State v. Chapman, 1 S.D. 414, 47 N.W. 411, 10 L.R.A. 432; People v. Maughs, 8 Cal. App. 107, 96 P. 407; People v. Craig, 196 Cal. 19, 235 P. 721.

■■■ Defendant took the witness stand on his own behalf. On direct examination he testified he had never been convicted of a prior criminal offense. On cross-examination he denied having ever been convicted of petit larceny in Brookings County. That the State was properly allowed, on rebuttal, to show the record of defendant's prior conviction of petit larceny in Brookings County, is so apparent it merits no discussion. Richardson v. Gage, 28 S.D. 390, 133 N.W. 692, Ann.Cas.1914B, 534; Moberg v. Scott, 42 S.D. 372, 175 N.W. 559; and Allen v. McLain,

75 S.D. 520, 69 N.W.2d 390. For impeachment purposes the remoteness of a prior conviction goes primarily to its weight and credibility rather than to its competency. The jury, rather than the court, should ordinarily be allowed to judge its disparaging effect, if any.

■ Defendant also contends the trial court erred in refusing to give his requested Instruction concerning the weight and sufficiency of circumstantial evidence. The instruction stated in part: "The circumstances proved must be convincing of guilt to such a degree that an attempt to explain them upon any hypothesis other than defendant's guilt would be beyond the bounds of reason." The proposed instruction was misleading and could not be given without modification. "Such requests should always be refused unless the form of the proposed charge is such that it can be read without change." State v. Hellekson, 13 S.D. 242, 83 N.W. 254, 255. The rule on circumstantial evidence set forth in State v. Guffey, 39 S.D. 84, 163 N.W. 679, has consistently been followed and approved by this court in numerous subsequent cases; State v. Guffy, 50 S.D. 548, 210 N.W. 980; State v. Czerney, 61 S.D. 172, 247 N.W. 376; State v. Tarbell, 64 S.D. 330, 266 N.W. 677; State v. Giffen, 64 S.D. 430, 267 N.W. 229; State v. Schelske, 64 S.D. 574, 269 N.W. 81; State v. Neiman, 69 S.D. 521, 12 N.W.2d 374; State v. Rasch, 70 S.D. 517, 19 N.W.2d 339. The rule has been so frequently cited it would serve no useful purpose to again restate it here.

■ There was no direct proof of defendant's original "taking" of the cattle. The State relied for a conviction on the rule of "recent possession of stolen property." There was direct evidence in the case, such as the identification and ownership of the cattle, but this evidence went merely to prove the circumstance of recent possession. As stated in 32 Am.Jur.,Larceny, § 154, p. 1070: "Recent possession of stolen property is not positive evidence of theft; it is merely a circumstance tending to establish it, and where it is relied on to establish inferentially a taking of the property, it is a case of circumstantial evidence, so that the trial court should ordinarily charge on the law relating

thereto, although failure to do so may not be error, in the view of some courts, under certain circumstances."

█ In instructing the jury the trial court "must state to them all matters of law which it deems necessary for their information in giving their verdict". SDC 34.3651. This statute has been construed to be discretionary in nature. In the absence of a proper request the trial court's failure to instruct on the weight of circumstantial evidence does not constitute reversible error even though the evidence relied on for a conviction rests entirely upon such evidence. State v. Colvin, 24 S.D. 567, 124 N.W. 749; and State v. Millard, 30 S.D. 169, 138 N.W. 366. Also see Annotation, 15 A.L.R. 1049.

Although more detailed instructions on the weight and sufficiency of circumstantial evidence could properly have been given, nevertheless, we believe the instructions given were sufficient. Relative to recent possession of stolen property the jury was instructed "* * * If, from the evidence, you should be convinced beyond a reasonable doubt, as herein stated, that the property here in question was stolen, and that the defendant soon after its theft was in possession of it, that is a circumstance to be taken into consideration by you in making up your verdict, and unless such possession is satisfactorily explained, either by the defendant or by the facts and circumstances brought out upon the trial, it is sufficient upon which to base a conviction, provided upon the whole case you are satisfied beyond a reasonable doubt of the defendant's guilt, and that the property stolen was one or more head of cattle. If, upon the other hand, you believe the possession of the defendant under the circumstances shown by the evidence is as consistent with his innocence as with his guilt, it is your duty to acquit him."

Defendant attempted to explain his possession of the cattle. Counsel for the defendant stated in his brief, "The ultimate question here is who owned the cattle that were taken to Sioux Falls and sold by the defendant on July 25, 1956." We agree and on the issue of ownership the evidence of the State was direct, positive, and convincing. It was amply sufficient to show beyond a reasonable doubt

the cattle belonged to Altfillisch instead of defendant. Under the instructions given by the court, if the jury believed the cattle sold by defendant belonged to Altfillisch then the proved circumstances in the case could not by any reasonable theory be true and defendant innocent. On the other hand, if the jury believed defendant was the the owner of the cattle there could be no hypothesis except his innocence. Defendant was thereby given the full benefit of the circumstantial evidence rule on the decisive and ultimate issue involved. Accordingly, no harm resulted from the failure to give more detailed instructions on the subject of circumstantial evidence. State v. Rasmusson, 72 S.D. 400, 34 N.W.2d 923.

In reviewing the entire record we are satisfied no error was committed in the trial which injuriously affected the substantial rights of the defendant.

Affirmed.

All the Judges concur.