STATE, Respondent v. BELT, Appellant

(111 N.W.2d 588)

(File No. 9910. Opinion filed November 14, 1961)

Tom Eastman, Jr., Rapid City, for Defendant and Appellant.

A. C. Miller, Atty. Gen.. Lester H. Herbrandson, Asst. Atty. Gen., Allen G. Wilson, Hot Springs, Lem Overpeck, Belle Fourche, for Plaintiff and Respondent.

BIEGELMEIER, J. Defendant charged with murder was found guilty of manslaughter in the first degree. The evidence showed Earl Perreault was killed while he and a neighbor were checking on the person who entered the Pete Perreault farm on the afternoon of August 9, 1959, by breaking the padlocked gate and fence. Earl, a brother

of Pete Perreault, lived nearby and was in charge of his brother's farm while Pete was on a vacation. The neighbor discovered the entry, saw a car leave the place and reported it to Earl. Later, defendant, after admitting to the neighbor he had broken the gate started to leave the area. The neighbor and deceased followed defendant in a car and pickup. Defendant drove through the neighbor's fence into his pasture where his car stalled. As the neighbor was leaving to call the sheriff the evidence showed defendant shot and killed Earl and shot at the neighbor when he ran back to where Earl had fallen. Defendant then drove away through the fields in Earl's pickup, breaking down several fences in doing so; after an intensive search he later surrendered to the sheriff at the home of an attorney. This outline but briefly states the record as the transcript of the trial court proceedings covers 1,275 pages, nearly 800 of which consists of the voir dire examination of prospective jurors.

 Before trial defendant moved for a change of venue on the ground he could not have a fair trial before an impartial jury in Fall River county where the alleged crime occurred. Defendant's affidavit stated deceased was a longtime and respected white citizen of that county, that defendant, a nonresident thereof, was much hated because he was of Indian blood and was once before implicated in an act of violence and erroneous news reports were made which prejudiced public opinion. Two of the printed reports were attached to this showing; these appear to be a short recounting of the shooting, the search for defendant and the scheduled inquest. A law clerk of defendant's attorney and nine other persons made affidavits in support of the motion. They voiced the opinion that it would be impossible to obtain a jury which, or a juror who, in Fall River county would not be biased against defendant. The state's attorney, sheriff and six other persons made affidavits that in their opinion defendant could receive a fair and impartial trial therein. The trial judge denied the motion. On this showing the trial court did not abuse the sound judicial discretion vested in it.

State v. Meservey, 53 S.D. 60, 220 N.W. 139. At the trial the original panel of jurors was exhausted by challenges and it was twice necessary to order additional persons to be summoned as jurors. At each of these times and at the time the jury was chosen, the change of venue motion was made and denied. SDC 1960 Supp. 34.0817 requires the application to be made "before the trial is begun". In State v. Johnson, 24 S.D. 590, 124 N.W. 847, 852, this court had under consideration the time requirement as to filing an affidavit of prejudice against a presiding judge provided for in the same section, then § 292 of the 1903 Code of Criminal Procedure. There it wrote:

> "The law providing for a change of venue and of judges is designed to secure and preserve the right of the accused to a trial before a fair and impartial court and jury. * * * We hold, therefore, that the calling of the case for trial and the drawing of a juror is the beginning of the trial, and that the right to file an affidavit of prejudice against the trial judge cannot be exercised thereafter."

The court referred to State v. Pancoast, 5 N.D. 516, 67 N.W. 1052, 35 L.R.A. 518, where the motion for a change of venue was treated as a renewal of the original application in pursuance of leave expressly reserved, in the original ruling, indicating the first ruling was tentative only. From the record here it is not clear that appellant has assigned error for overruling the later motions. This being a criminal action we have concluded to deal with all these rulings on their merits.

Defendant is entitled to a trial by an impartial jury. Art VI, § 7, S.D.Const. Not only should the minds of the jurors be without bias or prejudice, but they should be removed from the bias, prejudice and excitement of others. State v. Meservey, supra; State v. Demerly, 56 S.D. 65, 227 N.W. 463. Defendant points out that while approximately a hundred jurors were examined, around fifty were disqualified for cause. The record does not include

a list of the jurors called, challenged and excused (SDC 1960 Supp. 33.1312) so it is not possible to know the persons retained as jurors except they would be from those of the jury panel passed for cause. Fourteen were chosen, counting two alternates. SDC 1960 Supp. 34.3607. A reading of their voir dire examination discloses forty-six were passed for cause by defendant and the State; thus nearly half met the statutory and constitutional qualifications. Many of those challenged and excused had heard or read about the case and had opinions; however, fourteen of these knew deceased, members of his family or some of the state's witnesses; six were excused for their stand on self-defense, five because of age, nonresidence or other reasons; nor was it all one way as a merchant said he could not be fair because it would embarrass him to bring in a guilty verdict as he did business with Indians; another said he knew defendant and could not be fair and impartial. All were subjected to detailed questioning and their answers indicate honesty and straightforwardness and a sincere desire to be fair to defendant. Practically all of those who had opinions said they were based on newspaper accounts, gossip or rumor. As an indication the state was joining in the effort to get impartial jurors, it did not resist these challenges, except in the two instances hereafter noted; none of those challenged and excused were asked if they could and would "notwithstanding such opinion, act impartially and fairly upon the matters" which if answered affirmatively would not disqualify them as jurors, SDC 1960 Supp. 34.3620. State v. Flack, 77 S.D. 176, 89 N.W.2d 30. There are no claims of demonstrations at, or publicity of, the trial. The written record indicates a calm and even tenor in which a trial should be held, though it was vigorously and aggressively contested; no excitement or prejudice beyond the fact that deceased was well, and apparently favorably, known in the county. The latter is insufficient to indicate defendant did not have a fair trial. State v. Meservey, supra. This is not to be compared with the effect of publicity on a change of venue shown in Irvin v State, 236 Ind. 384, 139 N.E.2d

898; see same case as Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, where the conviction was held invalid; nor with State v. Sheppard, 165 Ohio St. 293, 135 N.E.2d 340 (cert. den. 352 U.S. 910, 77 S.Ct. 118, 1 L.Ed.2d 119) and State v. Tannyhill, 101 Ohio App. 466, 140 N.E. 2d 332, in which the convictions were upheld. With the cautionary remarks in State v. Demerly, supra, in mind a trial court is governed by the exercise of a sound judicial discretion and an appellate court cannot reverse except for abuse of discretion. We have indicated the record shows no outward signs of excitement, ill will or prejudice. The trial court based his conclusion on the entire voir dire examination and also had the benefit of the intangible manifestations of impartiality or partiality reflected by the appearance, conduct and demeanor in the courtroom of the jurors and public. State v. Flack, supra. When ruling on one of the later motions he stated:

"Well, I've listened very carefully to the examination of the jury. I will admit that it appears that Mr. Perreault was widely known, and that he was probably well liked. I have also carefully listened to the answers given by all members who have been examined on the voir dire examination, and it has appeared to me as nearly as I was able to determine that in nearly all instances where a person felt that they would be in any way prejudiced in the case, that they have so stated, and stated that they did not believe they could be fair and impartial jurors, although one, of course, can never be assured, I have not sensed an overwhelming bitterness, but rather a desire on the part of everyone, whether they knew him or not, that the defendant have a fair and impartial trial by the fact that those persons who knew Perreault did not feel that they could or would be fair, and impartial jurors. Motion for change of place of trial is therefore denied."

Cf. State v. Sheppard, supra. It is not necessary to determine that a change of venue may be granted after the trial

has begun even on the court's initiative, with defendant's consent, if it be required to insure defendant's constitutional right of trial by an impartial jury and that should develop during the examination of the jury, though in contravention of the statute (see State ex rel. Gannon v. Porter Circuit Court, 239 Ind. 637, 159 N.E.2d 713) as no abuse of discretion is shown.

■■ Defendant exhausted all his peremptory challenges and so may complain of denial of challenges for cause. State v. Flack, 77 S.D. 176, 89 N.W.2d 30. Juror Kaudy was challenged for cause; after further examination by the court and one of defendant's attorneys, defendant's counsel passed this juror for cause; this withdrew his challenge. Juror Hagen was challenged because he first said he had heard the case discussed based on idle rumor, had a conclusion in his mind as to defendant's guilt and it would take some evidence to remove it; on further examination stated he could be fair and impartial, that he presumed the defendant innocent and until such time as the state proved defendant guilty beyond a reasonable doubt from the evidence alone he would be for acquittal. The juror came within the exception as to disqualification in SDC 1960 Supp. 34.3620 and the trial court's conclusion based on the whole voir dire examination is binding. State v. Flack, supra. See also State v. Morse, 35 S.D. 18, 150 N.W. 293.

■ SDC 1960 Supp. 34.3649 requires at each adjournment the jury be admonished not to converse on any subject connected with the trial or form or express an opinion thereon until final submission. While the examination of prospective jurors was taking place the court recessed to permit summoning of additional veniremen without giving such admonition. The court had theretofore and did thereafter give such admonition. SDC 1960 Supp. 34.3604, 34.3605 and 34.3606 refers to jurors duly drawn and summoned to form a jury and how they are to be drawn. SDC 1960 Supp. 34.3607 declares: "The jury consists of twelve men chosen as prescribed by law,

and sworn or affirmed well and truly to try" the action. The "jury" had not yet been chosen or sworn to try the case and while it is a practice to be commended to so instruct prospective jurors, it is not required.

■ . The court permitted the state's attorney at the opening of the trial and before any prospective jurors were examined to indorse the name of Iona Perreault, deceased's wife, upon the information, the omission being an oversight. Defendant claims she did not testify to any material fact and the only purpose of her testimony was to arouse sympathy of the jury. The granting of this permission is largely a matter of discretion with the trial court and in the absence of some showing of abuse, or bad faith on the part of the state's attorney in purposely withholding the name resulting in substantial prejudice to the defendant, it will not constitute ground for reversal. State v. Fulwider, 28 S.D. 622, 134 N.W. 807.

■ ■ The information charged that on August 9, 1959, defendant did unlawfully, feloniously, wilfully and with malice aforethought, murder a human being, Earl Perreault, and did thereby commit the crime of murder. In South Dakota there is one crime of murder, which is defined in SDC 13.2007. Defendant asserts (but cites no authority therefor) the information is defective in that it does not specify in what manner the alleged murder was committed and if SDC 1960 Supp. 34.3007 is construed to omit this it is unconstitutional under Sec. 7, Art. VI of our Constitution which provides that "In all criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation against him * * *". SDC 1960 Supp. 34.3007 after stating the information shall contain the title of the action, the name of the court in which it is filed, the names of the parties, continues:

> "It shall not be necessary to set out therein, with particularity, the facts relied upon to constitute the offense charged, and it shall only be

necessary to allege the commission of the offense in the language by which the crime is usually designated; as, in the case of an accusation of murder, that the accused (naming him) did, at a time and place stated, feloniously, willfully, and with malice aforethought, murder a human being, naming him); * * * and upon the trial it shall be competent to prove the manner in which the crime was committed as fully and as particularly as if all the facts constituting the crime had been fully alleged and set forth in the indictment or information presented or filed."

SDC 1960 Supp. 34.3001 abolishes all technical forms of pleading in criminal actions, it being necessary to plead only the commission of the offense by its usually designated name in plain, ordinary language. SDC 1960 Supp. 34.3010 includes a declaration an information is sufficient if it can be understood therefrom "(6) That the offense charged is designated in such a manner as to enable a person of common understanding to know what is intended." The power of the legislature to prescribe the form or manner of stating a charge in a criminal process is limited and controlled by the Constitution. This court in State v. Reidt, 54 S.D. 178, 222 N.W. 677, 678, speaking through Judge Brown, said:

"Except in so far as it may be limited by the Constitution, the Legislature had power to enact that an indictment or information in the form prescribed by this section should be sufficient, and the only limitation in the Constitution is found in article 6, § 7, which provides that in all criminal prosecutions the accused shall have the right 'to demand the nature and cause of the accusation against him.' If, therefore, the information in this case informs the accused of the nature and cause of the accusation against him, it is sufficient, because it certainly complies with the provisions of section 4717 (now SDC 1960 Supp.

34.3007) and also with subdivision 6 of section 4725 (now SDC 1960 Supp. 34.3010) which requires the offense to be designated in such a manner as to enable a person of common understanding to know what is intended."

In State v. Sinnott, 72 S.D. 100, 30 N.W.2d 455, 456, which involved the sufficiency of an information charging defendants with conspiracy to commit an offense, after considering the interpretations of pertinent constitutional and statutory provisions in its prior decisions the court wrote:

"It has been frequently declared in substance that an information or indictment must apprise the defendant with reasonable certainty of the accusation against him so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense. 27 Am.Jur., Indictments and Information, §§ 57 and 58. The question therefore presented is whether the information before us sufficiently meets these requirements."

This court concluded the information sufficiently identified the crime intended to be committed and set forth the charge with sufficient particularity to apprise defendants of the accusation against them so they could prepare their defense and plead the judgment as a bar to a subsequent prosecution for the same offense. This rule of reasonable certainty in determining the sufficiency of an information has since prevailed in this jurisdiction. State v. Rasmusson, 72 S.D. 400, 34 N.W.2d 923; State v. Pepka, 72 S.D. 503, 37 N.W.2d 189; State v. Johnson, 76 S.D. 37, 71 N.W.2d 733; State v. Wood, 77 S.D. 120, 86 N.W. 2d 530. The information in the instant case meets all constitutional and statutory requirements. It states the elements of the crime with sufficient particularity to have apprised defendant of the crime charged and to have enabled him to prepare his defense and to be protected in the event of double jeopardy. Defendant made no re-

quest for a bill of particulars, (State v. Otto, 38 S.D. 353, 161 N.W. 340; State v. Wlson, 76 Wyo. 297, 301 P.2d 1056; State v. Crank, 105 Utah 332. 142 P.2d 178, 170 A.L.R. 542) probably because the evidence taken at the preliminary hearing, which appears in the settled record disclosed the details of the cause of death and the facts surrounding it.

◼ Statutes permitting various short forms of indictments and informations have been subject to criticism by some courts. People v. Bogdanoff, 254 N.Y. 16, 171 N.E. 890, 69 A.L.R. 1378. A review of constitutional provisions appears in State v. Straughan, 229 La. 1036, 87 So.2d 523, 528, which struck down a statute providing it was sufficient to charge the defendant "by using the name and article number of the offense committed". It may be well to remind prosecuting attorneys that the conclusion reached here is limited to the narrow issue presented; also where the manner, means or other facts are necessary ingredients of the offense, it must be pleaded; further that SDC 1960 Supp. 34.3007 does not prohibit such additional statements, thus obviating the furnishing of bills of particulars or appeals based on the consti-utional claim. State v. Straughan, supra.

◼ Error is claimed for admitting two photographs which showed the wooden gate and fence across the road to the Perreault place as they existed before and after defendant drove through it. The objection is that they were not material and were reconstructed photographs. It was necessary to close the gate, place the post and wire fence in position for the pictures; these conditions were testified to by the witness and it was not error to admit these photographs. Doolin v. City of Winner, 48 S.D. 400, 204 N.W. 899; Lundgren V. Minty, 64 S.D. 217, 266 N.W. 145; State v. Ebelsheiser, 242 Iowa 49, 43 N.W.2d 706, 19 A.L.R.2d 865.

◼ Defendant's statements made after his arrest while he was in jail with reference to his son showing the officers where the guns were hidden and later after they

had found them, were properly received in evidence. State v. Hinz, 78 S.D. 442, 103 N.W.2d 656.

■■■ The instructions permitted the jury to find defendant guilty of manslaughter in the first or second degree and defendant claims it was error to so instruct. This is based on the statement of the trial judge, made during the discussion of defendant's oral motion to dismiss the charges, that it constituted a proper charge under subsection (1) of SDC 13.2007. Defendant contends this was a ruling from which the state did not appeal and it became the law of the case. The ruling was a denial of the motion only and did not thereafter prevent the submission to the jury of the lesser offenses. SDC 1960 Supp. 34.3669 so provides. As Section 4926, 1919 Revised Code, it was considered in State v. Godlasky, 47 S.D. 36, 195 N.W. 832.

■■■ In conclusion it is claimed the evidence as a matter of law showed justifiable homicide in self-defense and the evidence is insufficient to sustain the verdict of guilty. The particulars in which the evidence is claimed insufficient are not set forth in an assignment of error except by referring to the motion for directed verdict of acquittal. The state's evidence showed defendant shot and killed deceased and when testifying, defendant in effect admitted this but claimed self-defense; defendant's guilt and that defense were submitted to the jury which held adversely to defendant. On the complete record, paid for by the county, which included the arguments of counsel for the state, it appears defendant had a fair trial and the evidence of his guilt is ample.

The judgment is affirmed.

All the Judges concur.